## Case No. 6,417.

### The HEROINE.

[6 Blatchf. 188; [1] 8 Int. Rev. Rec. 131.]

Circuit Court, S. D. New York. Oct. 1, 1868.

COLLISION—ROUGH WEATHER—LIGHTS—CONFLICT OF TESTIMONY.

1. In a collision case, where it appears that, at the time of the collision, the night was dark and rainy, with a high wind, and hazy, and the sea was running high, it should not be lightly presumed that the hands on board of a vessel would be remiss in their duty, and strong proof should be required to the contrary, in order to charge fault. Where, in such a case, several of the material witnesses were examined orally before the district court, and that court found that the vessel which was under obligation to avoid the other vessel, could have discovered her lights in time to avoid her, this court, although there was much evidence the other way, and the point was not free from doubt and difficulty, affirmed the decree.

[Cited in Gilman v. The Tyler, Case No. 5,-446; The Maggie P., 25 Fed. 206; The Rockaway, 25 Fed. 776.]

2. Fault imputed, because of the want of vigilance in a lookout.

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court, by the owners of the brig Almore against the barque Heroine, to recover for the damages caused to the brig, by a collision which took place on the morning of the 21st of November, 1865, about 3½ o'clock a. m., some sixty or eighty miles southerly from Montauk Point, between the barque and the brig. The brig was bound on a voyage from Turk's Island to Boston, with a cargo of salt. The barque, with a light cargo of hemp, and other goods, was going from Cronstadt, in Russia, to New York. The wind was east-northeast, and was free for the barque, which was heading about southwest by west. The brig was heading about southeast half south, and was close-hauled on her port tack. The brig was struck on her port bow by the starboard bow of the barque, her bowsprit was broken close to her bow, and was carried away, with rigging and sails, and fore topmast, and main topmast, and she sustained other injuries, so that her master and hands were compelled to abandon her as a derelict. The night was dark and rainy, with a high wind, and hazy, the sea was running high, and there was neither moon nor stars. Each vessel had a full complement of lights, placed, and burning, according to the act of congress [14 Stat. 228]. The district court decreed for the libellants [case unreported], and the claimants appealed to this court.

J. C. Dodge and Adoniram J. Heath, for libellants.

Benjamin R. Curtis and Edward D. McCarthy, for claimants.

NELSON, Circuit Justice. It is not to be denied, that the brig was on the privileged course, and that it was the duty of the barque to give way, and pass her in safety. This point is not contested. The ground of defence set up, and, earnestly and ably discussed, is, that, in consequence of the character of the weather, it was impossible for the barque to discover the lights of the brig, after the greatest diligence, and with a competent lookout, in time to make the proper movement to avoid her, and that the collision was the result of inevitable accident. There is much evidence, in the record, tending strongly to support this view, and, at best, the opposing view, cannot be said to be free from doubts and difficulties; and, if the question were an original one before me, resting upon the proofs as exhibited in the record, I might hesitate to reach the conclusion of the learned judge below. The darkness of the night, and the storm of wind and rain, as detailed by witnesses, must necessarily have greatly tended to embarrass the discovery of the lights of the approaching vessel. In such a state of the weather, and with such difficulties of navigation, it should not be lightly presumed that the hands on board of a vessel thus exposed to dangers involving life and property, would be remiss in their duty, and strong proof should be required to the contrary, in order to charge fault. In such cases, however, the question must mainly be one of fact, and, as several of the material witnesses were examined orally before the learned judge, his opportunity for determining the degree of credit to which their testimony is entitled, was, of course, much better than mine is. He has arrived at the conclusion that the barque could have discovered the lights of the other vessel, in the existing state of the weather, at least a quarter of a mile off, which would have afforded full time to execute the proper movement to avoid her. The weight of the proofs, as to the distance that the lights of a vessel might have been discovered at the time, is, perhaps, with this conclusion; and, in the relative position of the vessels, the starboarding of the barque a little earlier than it was done, would have enabled her to pass the other vessel clear. As it was, the bow only was struck.

What has influenced my mind in this case, more, perhaps, than any thing else, is the unsatisfactory account given of the lookout on the barque. Covered, as he was, with the main topsail, to protect himself from the storm, it is apparent that he was not in a condition, or free, to discharge the whole duty of a lookout. He was not, as he should have been, the first to discover the lights of the approaching vessel. Upon the whole, I think that the decree should be affirmed.

[See Case No. 6,416.]

[1] [Reported by Hon. Samuel Blatchford. District Judge, and here reprinted by permission.]

HERON, The KATE. See Case No. 7,619.